## KELLEY v. BROWN.

1. APPEAL AND ERROR—DIRECTED VERDICT.

   In reviewing judgment for defendants on directed verdict, in action for personal injuries, Supreme Court must disregard all testimony showing that plaintiff's injury might have been due to causes other than those alleged by plaintiff.

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—DEFENSES OF "ASSUMED RISK" AND "CONTRIBUTORY NEGLIGENCE."

   In action for personal injuries by employee against his employers who had not elected to come under workmen's compensation act, defenses of "assumed risk" and "contributory negligence" were not open to them; but employee still has burden of showing negligence on part of employers.

3. SAME—EXCEPTION TO RULE REQUIRING MASTER TO FURNISH SAFE TOOLS—PORTABLE LADDER.

   Small portable ladder or steps falls within "small tools or implements" exception to rule requiring master to inspect and provide his employees with safe tools, etc., with which to work.

4. SAME—DANGEROUS MACHINERY—NEGLIGENCE.

   It is only machinery and appliances which are recognized as in their nature dangerous to employees using them, or working in proximity to them, as to which employer owes duty to employee of looking out for his safety.

5. SAME—SMALL PORTABLE STEP-LADDER—NEGLIGENCE—DIRECTED VERDICT.

   In action by employee against his employers for personal injuries alleged to have been caused by defective condition of small portable step-ladder furnished by them for plaintiff's use, evidence held, insufficient to present issue for jury on question of defendant's negligence.

(356)

Appeal from Berrien; White (Charles E.), J. Submitted October 11, 1932. (Docket No. 68, Calendar No. 36,643.) Decided April 4, 1933.

Case by Frank Kelley against Ova D. Brown and another, copartners doing business as Brown Ice & Coal Company, for personal injuries received while in defendants' employ alleged to be due to defendants' negligence. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Thomas N. Robinson,* for plaintiff.

*Gore & Harvey,* for defendants.

BUTZEL, J. Plaintiff Frank Kelley had been employed for more than three and one-half years by defendants Ova D. Brown and Clarence C. Brown, copartners doing business as the Brown Ice & Coal Company of Benton Harbor, Michigan. On July 9, 1930, he and his son Zell were directed to fill the ice coolers in two meat markets. In order to fill coolers of this type, it was generally necessary to take along a small portable step-ladder or steps, so as to reach the opening in the upper part of the cooler, through which the ice was shoved. Defendants had two ladders for this purpose, and defendants'. foreman directed plaintiff to take the larger one, the only one not then in use. This ladder was of a portable type, about 4 feet in height, made of 1 inch boards fastened together with nails, and had six steps or treads from 20 inches to 2 feet long and 10 inches wide. It tapered towards the top, on which there was a platform about 2 feet square. It weighed approximately 75 pounds. The treads were fastened with braces and nails but not with bolts.

Plaintiff and his son proceeded with the load of ice to Grand Crossing Market, where, after placing the ladder against the cooler, plaintiff ascended, entered the cooler, and then received and piled up the ice as Zell took it from the truck and brought it up the ladder to the opening. After Zell had made 11 or 12 trips up the steps, each time carrying heavy cakes of ice, plaintiff left the cooler to assist his son. He picked up a heavy block of ice, weighing approximately 100 pounds, and proceeded up the steps.

Plaintiff was not able to testify at the trial. His son stated that plaintiff had no difficulty in going up the steps, but that when he had one foot on the steps near the top and raised his other foot to reach the platform—

"the cake of ice touched the ceiling and during the time, not catching his balance and the ladder weaving, he lost his balance and fell back. I couldn't estimate the time between the time of his cake of ice touching the ceiling and before he fell, but it wasn't very long. I suppose when he touched the ceiling it might have jarred him somewhat and jarred the steps, too. The steps didn't break with him when he touched the ceiling. The steps would weave both ways, sideways. At that time they weaved probably an inch that way. They didn't go any other way."

It is claimed that plaintiff fell on his head, and that this caused his subsequent serious condition. There was no wound, gash, or mark showing a head injury. The son continued to use the steps in completing the delivery of the order, and went up and down the ladder eight or nine times after plaintiff had fallen. Plaintiff accompanied his son in delivering another order of ice, but did not do any work. According to the son's testimony, on their return to defendants' place of business, plaintiff complained of pain, but

made no report of the injury to defendants. After
continuing to work for several days, he became very
ill. Paralysis set in, and he was in very bad con-
dition at the time of the trial.

As a verdict was directed for defendants, we must
disregard all testimony showing that plaintiff's in-
jury may have been due to other causes, as is in-
timated. Inasmuch as defendants did not elect to
come under the workmen's compensation act (2
Comp. Laws 1929, § 8407 *et seq.*), the defenses of
"assumed risk" and "contributory negligence" are
not open to them. This does not, however, relieve the
plaintiff from the burden of showing negligence on
the part of defendants.

We agree with the circuit judge that there was no
showing sufficient to submit the case to the jury. It
is nowhere shown that defendants were negligent in
any respect. It is claimed that the steps of the lad-
der became loose at times, and that it was necessary
for the employees to make them secure by driving
in the nails. The testimony indicates that the steps
were in their ordinary condition the day of the acci-
dent. Plaintiff's son used them 11 or 12 times in
carrying heavy loads up to the cooler. Plaintiff him-
self made one trip up and down the steps before he
was hurt. His son made 8 or 9 trips after plaintiff's
fall. It is admitted that plaintiff may have lost his
balance, or at least partially so, by striking the block
of ice against the ceiling. It is claimed, however,
that one of the steps "weaved" or wobbled to a
slight extent after plaintiff's cake of ice hit the ceil-
ing, and in that manner he may have been thrown off
his balance by this sway.

It is certain, nevertheless, that there was no break
in the steps whatsoever, and if they were slightly

out of repair, they could have been readily repaired by plaintiff and his son. The testimony shows they had been repaired in the past by knocking in the nails with an ice tong. There is no testimony to show that the defective condition of the steps was ever brought to the attention of defendants. One of plaintiff's witnesses, on being called, contradicted his former testimony and claimed that he had mentioned the condition of the steps to plaintiff's foreman at some time previous to the accident. However, there is un-contradicted testimony that the steps were repaired at various times.

A small portable ladder or steps falls within the "small tools or implements" exception to the rule requiring the master to inspect and provide his employees with safe tools, etc., with which to work. The cases of *Menere* v. *Copper Range Consolidated Co.*, 169 Mich. 367, and *Nichols* v. *Railroad Co.*, 145 Mich. 643, are referred to, to show that a ladder is not a tool of the kind that comes within the "small tools and implements" exception. These cases involved long, stationary ladders, 16 to 35 feet in length and permanently fixed, which employees had to climb or descend regularly in the course of their employment. They are clearly outside of the "simple tool" classification, and the cases are not in point.

In the case of *Sheltrown* v. *Railroad Co.*, 245 Mich. 58, Mr. Justice SHARPE, speaking for the court, commented upon the fact that the doctrine that a master must furnish his servant with reasonably safe machinery and appliances to perform the work required of him, and also keep them in safe condition by inspection from time to time and by ordinary care and diligence in making repairs, is subject to an exception in the case of simple tools and appliances. Af-

ter referring to the cases of *Anderson* v. *Railroad Co.*, 107 Mich. 591 (16 Am. Neg. Cas. 98); *Wachsmuth* v. *Shaw Electric Crane Co.*, 118 Mich. 275, 279, and *Toth* v. *Osceola Mining Co.*, 180 Mich. 274, he cites with approval the statement made in *Lynn* v. *Glucose Sugar Refining Co.*, 128 Iowa, 501 (104 N. W. 577), in which the court said:

"It is only machinery and appliances which are recognized as in their nature dangerous to employees using them, or working in proximity to them, as to which the employer owes a duty to the employee of looking out for his safety."

Mr. Justice SHARPE further states:

"The decisions of other courts have been collected in the notes to 13 L. R. A. (N. S.) 679; 40 L. R. A. (N. S.) 832; 51 L. R. A. (N. S.) 337; and L. R. A. 1918D, 1141. What is, or is not, a simple tool under the rule stated, and the duty to inspect if it is not, depends much upon the use to which it is to be put by the employee. His age, his incapacity to appreciate danger, the nature of the employment, his familiarity with the work to be done, these and many other things may be considered in determining the obligation resting on the employer to make inspection. His nonliability in such cases rests upon the assumption that the employee is in as good, if not better, position to observe the defect as the employer. *Meyer* v. *Ladewig,* 130 Wis. 566 (110 N. W. 419, 13 L. R. A. [N. S.] 684). The test depends, not only on the simplicity of construction, but also somewhat on whether the tool is subjected to any other stress than the muscular effort of the person using it."

Notwithstanding some rulings in a few cases to the contrary, the great weight of authority is to the effect that a small portable stepladder is a simple tool or appliance. See *Smith* v. *Green Fuel Economizer Co.,* 123 App. Div. 672 (108 N. Y. Supp. 45); *Kelly* v.

*National Starch Co.,* 142 App. Div. 286 (126 N. Y. Supp. 979); *Shute* v. *City of New York,* 149 App. Div. 758 (134 N. Y. Supp. 111); *Blundell* v. *William A. Miller Elevator Manfg. Co.,* 189 Mo. 552 (88 S. W. 103); *Sivley* v. *Nixon Mining Drill Co.,* 128 Tenn. 675 (164 S. W. 772, 51 L. R. A. [N. S.] 337); *Philip Carey Roofing & Manfg. Co.* v. *Black,* 129 Tenn. 30 (164 S. W. 1183, 51 L. R. A. [N. S.] 340); *Collins* v. *Western Electric Co.,* 178 Ill. App. 23; *Nosal* v. *International Harvester Co.,* 187 Ill. App. 411. *Contra, Puza* v. *C. Hennecke Co.,* 158 Wis. 482 (149 N. W. 223); *Laurel Mills* v. *Ward,* 134 Miss. 447 (99 South. 11); *Goebel* v. *Railway Co.* (Mo. App.), 241 S. W. 665.

The trial court was correct in finding that there was no negligence shown on the part of defendants. The judgment of the lower court is affirmed, with costs to defendants.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.