■ WALTER GRAHAM, Respondent, v. BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant, et al., Defendant.— In a negligence action to recover damages for personal injury, the defendant Board of Education of the City of New York appeals from a judgment of the Supreme Court, Kings County, entered December 23, 1960 after trial upon a jury's verdict of $70,000 in plaintiff's favor, insofar as the judgment is against it. Judgment, insofar as appealed from, reversed on the law and the facts, without costs; action severed as against the defendant City of New York; and new trial granted as between the plaintiff and the defendant Board of Education. On August 19, 1955, the plaintiff, who had been employed as a cleaner by the custodian

in charge of maintenance of a New York City high school building, sustained personal injuries. It appears that a "hi-lift extension scaffold" (hereafter called "the ladder"), upon the top platform of which the plaintiff was standing for the purpose of cleaning a portion of the ceiling in the school gymnasium, "all of a sudden" (as the plaintiff testified) toppled over, throwing him to the floor. Prior to the occurrence, other employees of the custodian had extended in telescopic fashion the four sections of the ladder to a point about 24 feet from the floor and close to the ceiling. After trial, the jury returned a verdict in favor of the defendant city, which had purchased the ladder from the manufacturer, and in favor of the plaintiff against the defendant Board of Education, which had supplied the ladder to the custodian for use in maintaining the school. Only the board has appealed. Under all the circumstances here, and as admitted by the board in its answer, the board "operated, maintained and controlled said school and its appurtenances" and it was the board's duty to maintain the school and the school appurtenances in a reasonably safe condition. The ladder, which was an extensive piece of equipment supplied by the board, may reasonably be said to be one of such appurtenances. "If the employer [of the custodian or contractor] furnishes a ladder or a scaffold for the contractor's [custodian's] employees to work on he [the employer, i.e., the board] must be careful to furnish a safe appliance" (*Hess* v. *Bernheimer & Schwartz Brewing Co.*, 219 N. Y. 415, 418–419; cf. *Olsen* v. *Chase Manhattan Bank*, 10 A D 2d 539, 543, affd. 9 N Y 2d 829). In the proper discharge of the board's duty it was, therefore, incumbent upon the board to furnish and maintain a ladder free from defects which would render its use unsafe or dangerous. Hence, the issues involved were whether the ladder toppled: (1) because it contained such defects, regardless of whether the defects were inherent in its construction or developed as a result of its prior use and "wear and tear"; and (2) because the board failed to properly fulfill its duty to furnish and maintain the ladder free from defects which would render its use unsafe or dangerous. The proof to establish the existence of defects in the ladder was furnished by plaintiff's expert, a consultant mechanical engineer, who examined the ladder about two and a half years after the accident. On the basis of such examination he testified in effect that the ladder was defective in that when fully extended it had an excessive "lean" at the top of 10½ inches by reason of the excessive "play" or tolerance in the four sections as they "nested" in each other; and that such "lean" rendered the ladder unstable and its use unsafe. Such proof was insufficient, however, to establish that at the time of the expert's examination of the ladder its condition was substantially the same as it was at the time the accident occurred two and a half years earlier. No evidence was offered to show how the ladder may have been affected by its use and exposure during the intervening two and a half year period. There was no evidence as to whether the ladder was in fact subjected to further use; as to where and how it was stored; as to the extent to which it was affected by various changes in temperature; and as to whether anyone could or did tamper with it. The record also fails adequately to exclude the probability that the defects claimed may have been produced by the accident itself. In the absence of sufficient evidence to establish: (a) that the condition of the ladder remained substantially the same between the date of the accident and the date of its examination by the expert; and (b) that the defects claimed were not produced by the accident, it was error to receive the expert's opinion testimony for the purpose of proving that the defects existed at the time of the accident and were its proximate cause. Ughetta, Acting P. J., Kleinfeld, Brennan, Rabin and Hopkins, JJ., concur.